

ORDERED in the Southern District of Florida on June 17, 2022.



**Erik P. Kimball, Judge**
**United States Bankruptcy Court**
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

PLATO CHRIS FOUFAS,

    Debtor.
_____/

CASE NO.: 20-22967-EPK
CHAPTER 7

PLATO CHRIS FOUFAS,

    Plaintiff,

v.

THEODORA FOUFAS,
CARLTON R. MARCYAN, and
SCHILLER, DU CANTO & FLECK, LLP,

    Defendants.
_____/

ADV. PROC. NO.: 22-1013-EPK

**ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION**

In this order, the Court considers *Plaintiff's Motion to Alter or Amend Court's Order Granting Motion to Dismiss* [ECF No. 35, the "Motion for Reconsideration"], filed by the plaintiff in this adversary proceeding, and the debtor in this chapter 7 case, Plato Chris

Foufas.  The Court entered its *Order Granting Motion to Dismiss* [ECF No. 30].  In the Motion for Reconsideration, the plaintiff asks the Court to vacate that order, deny *Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) and Memorandum of Law in Support* [ECF No. 8, the "Motion to Dismiss"], and direct the defendants to respond to the plaintiff's first amended complaint [ECF No. 36].  For the reasons stated below, the Court grants all such requested relief.

The following is a summary of facts presented in the Court's original Order Granting Motion to Dismiss.  For ease of reference, the Court will refer to the plaintiff as Plato, and the Court will refer to the defendant Theodora Foufas as Teddy.

Plato and Teddy were divorced in 1995.  Property division and support issues were addressed in the courts of Illinois beginning in 1996.

Around the time of the divorce, Plato created an offshore trust into which he placed all of his business assets.  Plato is a beneficiary of the trust, along with his present spouse.  On its face, the offshore trust is a fully discretionary trust, meaning that the beneficiaries have no contractual right to distributions.

Following Plato's divorce from Teddy, an Illinois court ordered Plato to pay substantial monthly support to Teddy.  After paying for several years, Plato defaulted on the monthly support obligation, eventually resulting in a very large amount due to Teddy, now more than $5.18 million.

Several years before this bankruptcy case, Teddy obtained an order from the Illinois court finding that Plato's creation of the offshore trust was fraudulent as to Teddy.  The Illinois court ruled that Plato could not defend against Teddy's request that he be held in contempt based on his alleged inability to pay because Plato had created that inability by putting his assets in the offshore trust.  After extended litigation over a period of years,

2

Teddy obtained an order of the Illinois court directing that Plato be incarcerated until he paid a substantial sum into escrow.

Then Plato filed this bankruptcy case. In his schedules, filed under oath, Plato claims to own only his home in Florida (as tenants by the entirety with his present spouse) and minimal personal property, all of which he claims as exempt. He claims that all other property in his possession is owned by the offshore trust. In his schedules, Plato appropriately lists Teddy's claim as a domestic support obligation.

After Plato filed this case, Teddy caused Plato to be arrested and incarcerated under the Illinois court's pre-bankruptcy order. Plato immediately sought a ruling from the Illinois court that Teddy's action in having him arrested was a violation of the automatic stay arising from this bankruptcy case and Plato asked to be released from incarceration. Teddy opposed Plato's release, arguing that the automatic stay did not apply because Teddy sought to collect the domestic support obligation only from the offshore trust, which Plato claims he does not own. Teddy's pursuit of payment from assets in the offshore trust was consistent with the Illinois court's original contempt order and the order directing Plato's arrest.

The Illinois court denied Plato's motion to be released. Because of how the matter was presented to the Illinois court, this means that the Illinois court ruled that Teddy did not violate the automatic stay by causing Plato to be arrested in an effort to collect her domestic support obligation from the offshore trust. Plato appealed that order and the order was affirmed. Thus, there is a final order of the Illinois court ruling that Teddy did not violate the automatic stay when she caused Plato to be arrested consistent with the Illinois court's pre-bankruptcy order.

After losing in the Illinois trial and appeals courts, Plato filed the present adversary proceeding against Teddy and her counsel, seeking money damages and punitive damages

3

based on their alleged willful violation of the automatic stay in causing Plato to be arrested. The issues presented in this adversary proceeding are exactly the issues presented to the Illinois courts.

In briefing on the defendants' Motion to Dismiss, the parties focused on whether they are bound by the rulings of the Illinois courts that the automatic stay did not prevent the defendants from having Plato arrested. The defendants argued that the Illinois rulings are binding, pointing to several legal theories. Plato argued that this Court may consider anew the question whether the defendants' actions violated the automatic stay. In its original Order Granting Motion to Dismiss, the Court set aside that question, ruling that Plato cannot proceed with his present claim against the defendants because to do so requires Plato to make allegations that are directly at odds with statements made under oath in his schedules.

In most circumstances, an act to collect a pre-bankruptcy debt is a violation of the automatic stay. 11 U.S.C. § 362(a). However, there is an exception for "collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). This exception has two components: (1) the debt to be collected must be a domestic support obligation as defined in 11 U.S.C. § 101(14A), and (2) the collection must not be aimed at property of the bankruptcy estate.

The exception contained in section 362(b)(2)(B) is purposely broad. In general, a domestic support obligation is not subject to discharge. So long as the holder of such a claim does not seek to collect from assets that are subject to administration in the bankruptcy case, the claimant is free to act even prior to discharge. It is a violation of the automatic stay only if the claimant seeks to collect from property of the bankruptcy estate.

In both his original and his amended complaints [ECF Nos. 1 and 36], Plato alleges that no exception to the automatic stay applies to the defendants' actions. That necessarily

4

includes the exception provided in section 362(b)(2)(B).  It is undisputed that Teddy's claim is a domestic support obligation.  Thus, the exception applies so long as Teddy was not attempting to collect from bankruptcy estate assets.  Put another way, Plato's allegation that no exception to the automatic stay applies is the same as alleging that the defendants sought to collect Teddy's domestic support claim from assets of the bankruptcy estate.

It is clear from the litigation in the Illinois courts that Teddy sought to collect only from assets held by the offshore trust.  This was the very purpose of the pre-bankruptcy contempt and arrest orders.  The defendants merely assisted in the proper authorities' effectuation of the arrest order.  In presentation of the matter here, the defendants also argued that they could collect from any other assets owned by Plato that are not part of the bankruptcy estate without violating the automatic stay, but that is not what they were doing when they had Plato arrested.

Plato stated under oath in his own schedules, and has otherwise consistently taken the position in this case, that he has no ownership interest in the assets held in the offshore trust.  In Plato's view, those assets are not property of his bankruptcy estate.  These statements under oath are directly at odds with his original and amended complaints in this adversary proceeding.

In light of this, the Court granted the defendants' Motion to Dismiss, with leave for Plato to amend both his complaint and his schedules to be consistent with the necessary allegation that the assets in the offshore trust are Plato's property and thus property of the bankruptcy estate.  Plato's amended complaint [ECF No. 36] did not meet this requirement, nor has he amended his schedules.

Instead, Plato filed the present Motion for Reconsideration under Fed. R. Civ. P. 59(e), made applicable here by Fed. R. Bankr. P. 9023, asking the Court to vacate the Order Granting Motion to Dismiss.  Plato argues that the Court dismissed his original complaint

5

on grounds not raised by the parties, and that it is not appropriate for the Court to apply judicial estoppel at the motion to dismiss stage, among other arguments.

In light of those arguments, the Court set the Motion for Reconsideration for hearing and directed the parties to brief the issues. The Court has carefully reviewed the Motion for Reconsideration, the defendants' response [ECF No. 39], and the arguments of the parties presented at the hearing on May 25, 2022.

In the Motion for Reconsideration, Plato's description of the Court's original Order Granting Motion to Dismiss is misleading. The Court did not focus on Plato's valuation of his beneficial interest in the offshore trust at $0, as Plato suggests. Plato claims that his interest as beneficiary of the offshore trust has no value because the offshore trust is fully discretionary and he has no right to demand anything from it. But, more importantly, Plato also claims that he has no property interest in any of the assets held in the name of the offshore trust. In the Court's original order, the Court was careful to always mention, in tandem, Plato's claimed value-less beneficial interest in the offshore trust <u>and</u> that he stated under oath he has no interest in the assets held by the offshore trust. The defendants have never suggested that they were attempting to collect Teddy's domestic support obligation by realizing on Plato's beneficial interest in the offshore trust. They sought to collect from the assets held in the offshore trust.

Plato complains that in its original Order Granting Motion to Dismiss the Court ruled based on judicial estoppel, an argument not raised by the parties, and that judicial estoppel should not be addressed at the motion to dismiss stage in any case. Judicial estoppel has two elements: (1) the plaintiff took a position under oath that is inconsistent with pursuit of the action; and (2) the plaintiff did so with the intent to make a mockery of the judicial system. *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (en banc). Judicial estoppel requires the Court to determine whether a plaintiff's

6

inconsistent statements are calculated to make a mockery of the judicial system based on all the facts and circumstances of a particular case. *Id.* at 1185.  Upon reconsideration in light of the plaintiff's arguments, the Court agrees that it is not appropriate to dismiss this case at this stage based solely on application of judicial estoppel.  At the hearing on the Motion for Reconsideration, the defendants stated that it was and remains their intention, if the case is not dismissed, to file a motion for summary judgment based on judicial estoppel.  Summary judgment is a more appropriate point for the Court to rule on that issue.  Accordingly, the Court will vacate its original Order Granting Motion to Dismiss.

The Court next addresses the arguments presented in the defendants' Motion to Dismiss and related briefs.  ECF Nos. 8, 24, and 29.  The defendants raised three arguments:  (1) under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to determine whether the defendants' having Plato arrested in Illinois was in violation of the automatic stay as the Illinois courts have already ruled on the issue; (2) the enforcement of the Illinois arrest order did not violate the automatic stay as it was an appropriate enforcement of the Illinois court's contempt power; and (3) Plato's claim is barred by collateral estoppel as the Illinois courts have already ruled against him in a final judgment.

Starting with the second argument, when a non-bankruptcy court exercises its contempt power to enforce the sanctity of its own orders, and not primarily to effectuate the collection of a debt, the contempt action is not in violation of the automatic stay. Collier on Bankruptcy ¶ 362.05 (Richard Levin & Henry J. Sommer eds., 16th ed.).  The facts here do not fall under that rubric.  The defendants caused Plato's arrest primarily in an effort to obtain payment of the domestic support obligation, acting consistent with orders of the Illinois court designed for that purpose.  The actions Plato complains of were a collection effort prohibited by the automatic stay unless an exception applies.

7

The defendants' first and third arguments are closely related. The defendants argue that under either the *Rooker-Feldman* or collateral estoppel doctrines, or both, Plato is bound by the adverse rulings of the Illinois courts. Thus, Plato's claims here must fail.

There is substantial dispute over whether the bankruptcy court presiding over a debtor's case is bound by a ruling of another court, state or federal, determining the application of the automatic stay. The majority position is that the bankruptcy court may consider anew whether a particular act was in violation of the automatic stay. *See, e.g.*, *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000) (en banc); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125 (3d Cir. 1992); *In re Zausner*, 638 B.R. 196 (Bankr. M.D. Fla. 2022); *Sw. Airlines Co. v. Tidewater Fin. Co. (In re Cole)*, 552 B.R. 903 (Bankr. N.D. Ga. 2016). Decisions in the majority rely on a variety of theories, to a great extent centered around the premise that the administration of the bankruptcy estate requires that all determinations relating to the extent of the automatic stay be centralized with the court overseeing the bankruptcy case. A substantial minority of courts take the opposite view, relying on the *Rooker-Feldman* doctrine, collateral estoppel, or a combination of those, ruling that the bankruptcy court may not reconsider a state or other federal court ruling on the applicability of the automatic stay. *See, e.g., Singleton v. Fifth Third Bank (In re Singleton)*, 230 B.R. 533 (B.A.P. 6th Cir. 1999); *Siskin v. Complete Aircraft Servs. (In re Siskin)*, 258 B.R. 554 (Bankr. E.D.N.Y. 2001). There is no binding authority in this circuit. In the present case, it is not necessary for this Court to weigh in on one side or the other.

It is undisputed that Teddy's claim against Plato is a domestic support obligation. Plato concedes this in his schedules filed under oath. The only real issue is whether the assets in the offshore trust are Plato's property and thus property of the bankruptcy estate. If they are, then the defendants sought to collect from property of the estate and their

actions violated the automatic stay. If they are not, then the defendants were not cabined by the automatic stay. In other words, the question in this case is not whether the automatic stay applied. The question is narrower: whether the assets in the offshore trust are property of the estate.

Under 28 U.S.C. §§ 1334(a) and (e)(1), and the District Court's standing order of reference, this Court has exclusive jurisdiction over Plato's bankruptcy case, Plato's property, and property of the bankruptcy estate.

> The equitable jurisdiction of the bankruptcy court over property of the estate is the single most central component of bankruptcy jurisdiction. The entirety of bankruptcy jurisprudence in the United States, including the Bankruptcy Act, the present Bankruptcy Code, and more than 200 years of case law including numerous Supreme Court decisions, hammers home the idea that bankruptcy is at its core an equitable proceeding dealing with a specific *res*, the bankruptcy estate. There is nothing more core to the bankruptcy process than the determination of what is, and what is not, included in the bankruptcy estate.

*Fannie Mae v. CCH John Eagan II Homes, L.P. (In re CCH John Egan II Homes, L.P.)*, No. 16-01183-EPK, 2016 Bankr. LEXIS 3758, *11-17 (Bankr. S.D. Fla. Oct. 17, 2016) (outlining the scope of federal bankruptcy jurisdiction) (citation omitted). No other court has the power to determine whether the assets in the offshore trust are Plato's property and thus property of the bankruptcy estate. Because the rulings of the Illinois courts amount to a determination that the assets in the offshore trust are not property of the estate, a question solely within the purview of this Court, the Court is not bound by those rulings.

In light of the foregoing, the Motion to Dismiss will be denied. Because the plaintiff's first amended complaint was filed more than 21 days after service of the Motion to Dismiss, the Court will treat the Motion for Reconsideration as a request for authority to file the first amended complaint pursuant to Fed. R. Civ. P. 15(a)(2), made applicable by Fed. R. Bankr. P. 7015, and will grant that request. The Court will direct the defendants to respond to the first amended complaint. Nothing in this order is intended to prejudice the

rights of the defendants to pursue summary judgment, or otherwise defend this case, based on judicial estoppel or any other theory.

For the foregoing reasons, it is ORDERED AND ADJUDGED that:

1. The *Plaintiff's Motion to Alter or Amend Court's Order Granting Motion to Dismiss* [ECF No. 35] is GRANTED to the extent provided in this order.

2. The *Order Granting Motion to Dismiss* [ECF No. 30] is VACATED.

3. The *Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) and Memorandum of Law in Support* [ECF No. 8] is DENIED.

4. The Court construes the *Plaintiff's Motion to Alter or Amend Court's Order Granting Motion to Dismiss* [ECF No. 35] as a request for authority to file the First Amended Complaint [ECF No. 36] pursuant to Fed. R. Civ. P. 15(a)(2), made applicable by Fed. R. Bankr. P. 7015, such request is GRANTED, and the First Amended Complaint is deemed filed.

5. Defendants are directed to respond to the First Amended Complaint not later than 14 days after entry of this order.

6. The Court will hold a continued status conference on **July 13, 2022 at 9:30 a.m.** The hearing will be held at the United States Bankruptcy Court, The Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401.  Although the Court will conduct the hearing in person, any interested party may choose to attend the hearing remotely using the services of Zoom Video Communications, Inc. ("Zoom"), which permits remote participation by video or by telephone.  To participate in the hearing remotely via Zoom (whether by video or by telephone), you must register in advance no later than 3:00 p.m., one business day before the date of the hearing. To register, click on or enter the following registration link in a

browser:

https://www.zoomgov.com/meeting/register/vJIsduGsrTouGn7Udkhqe_ZF90qPJ3uM95E.

If a party is unable to register online, please call Dawn Leonard, Courtroom Deputy, at 561-514-4143.  All participants (whether attending in person or remotely) must observe the formalities of the courtroom, exercise civility, and otherwise conduct themselves in a manner consistent with the dignity of the Court.  This includes appropriate courtroom attire for those participants appearing in person or by video.

      7.      All provisions of the *Order Setting Status Conference and Establishing Procedures and Deadlines* [ECF No. 3] remain in full force and effect to the extent not inconsistent with this order.

###

Copies Furnished To:
Robert F. Reynolds, Esq.

*Robert F. Reynolds, Esq. shall serve a copy of this order on all appropriate parties and file a certificate of service with the Clerk of Court.*