

**ORDERED in the Southern District of Florida on May 3, 2023.**



                         **Erik P. Kimball, Judge**
                         **United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**In re:**

**Plato Chris Foufas,**

    **Debtor.**

**Case No. 20-22967-EPK
Chapter 7**

_____/

**Plato Chris Foufas,**

    **Plaintiff,**

v.

**Adv. Proc. No. 22-01013-EPK**

**Theodora Foufas,
Carlton R. Marcyan, and
Schiller, DuCanto & Fleck, LLP,**

    **Defendants.**

_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court upon the *Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law in Support* [ECF No. 52] (the "Motion") filed by defendants Theodora Foufas, Carlton R. Marcyan, and Schiller, Ducanto & Fleck, LLP; the response [ECF No. 79] filed by Plato Chris Foufas; and the reply [ECF No. 90]

Page 1 of 15

filed by the defendants. For the reasons stated below, the Court will grant the Motion and enter judgment in favor of defendants.

## Facts

Plato Chris Foufas is the debtor in the above-captioned chapter 7 case and the plaintiff in this adversary proceeding. Mr. Foufas was previously married to Theodora Foufas. For ease of reference, the Court will refer to Mr. Foufas as Plato, and the Court will refer to Theodora Foufas as Teddy. Plato and Teddy were divorced in Colorado in 1995. However, proceedings for equitable distribution of marital assets and related matters took place in the Circuit Court of Cook County, Illinois.

The Illinois court entered an opinion making certain findings and addressing support obligations in 1996. Plato retained all of his then existing business assets. He soon thereafter transferred those assets to an offshore trust known as the KM Trust. The Illinois court found that Teddy suffers from several serious medical conditions which prevented her from working and that she required multiple invasive surgeries. The Illinois court initially awarded Teddy monthly maintenance payments of $20,000.

In 1999, the Illinois court entered a supplemental judgment increasing monthly maintenance payable to Teddy to $22,000 and ordering a lump sum payment of $252,086.50. In that supplemental judgment, the Illinois court found that Plato's transfer of assets into the KM Trust was fraudulent and was done to avoid paying sums due to Teddy. The Illinois court also held Plato in contempt for failing to pay amounts due under the 1996 order.

For about 5 years, Plato paid the $22,000 monthly maintenance to Teddy. Beginning with the payment due on January 1, 2006, Plato stopped making monthly maintenance payments to Teddy. Between 2006 and 2009, Teddy filed several motions with the Illinois court seeking to hold Plato in contempt of court for failing to make monthly maintenance

payments. Apparently, settlement negotiations resulted in none of those motions being heard by the Illinois court. In 2009, Plato transferred all of his personal property to the KM Trust.

In 2016 Teddy filed another motion seeking entry of an order to show cause why Plato should not be held in contempt of court for failing to pay the monthly maintenance of $22,000. In June 2018, the Illinois court entered an order directing Plato to show cause why he should not be held in contempt. Plato claimed he was insolvent and could not pay the overdue maintenance. He also reported over $16 million in income on his 2016 tax return.

The Illinois court held an evidentiary hearing in July 2019. On August 1, 2019, the Illinois court entered an order finding Plato in contempt for failure to pay the monthly maintenance to Teddy. The Illinois court found that Plato "will do anything in his power to not pay maintenance. That has been his goal … Nothing about that has changed." The court noted that Plato created the KM Trust to avoid making maintenance payments. The court directed that Plato be committed to the Cook County Jail until he purged himself of the contempt by paying to Teddy the sum of $5,183,621.78. The Illinois court initially stayed the order of incarceration until November 1, 2019 to permit Plato to post a bond.

Plato sought rehearing of the Illinois court's contempt order, which was denied. When denying the motion for rehearing, the Illinois court again noted Plato's steadfast refusal to comply with court-ordered obligations. The court stated, "He has really chosen to do what he wants to do, support his own luxurious lifestyle and avoid his obligations and his responsibilities that have been ordered for years and years and years and years."

Plato then appealed the contempt order, which was affirmed by the Appellate Court of Illinois. The Appellate Court also noted that Plato created the KM Trust "with the obvious purpose of avoiding the payment of his maintenance obligations." Eventually, in September 2020, the Illinois court issued a Body Attachment Order directing that Plato be incarcerated

until he posted a bond. A copy of the Body Attachment Order is attached to Plato's complaint in this adversary proceeding.

On November 27, 2020, Plato filed a chapter 7 petition with this Court. ECF No. 1, Case No. 20-22967-EPK. As of that date, Plato had not been arrested as a result of the Body Attachment Order.

On August 2, 2021, during this bankruptcy case, Plato was arrested in Illinois pursuant to the Body Attachment Order and taken to the Cook County Jail. The defendants knew Plato would travel to Illinois at that time because of his testimony at an examination under Fed. R. Bankr. P. 2004 in his bankruptcy case.

Plato immediately sought relief from the Illinois court, arguing among other things that the automatic stay that arose as a result of his bankruptcy case prohibited the enforcement of the Body Attachment Order. In response, citing 11 U.S.C. § 362(b)(2)(B), the defendants made it clear that they were seeking to recover from the KM Trust and argued that the automatic stay did not apply because such assets are not property of the bankruptcy estate and the debt they sought to collect is a domestic support obligation.

The Illinois court denied Plato's motion for release from incarceration in a brief order. While that order does not explicitly address the application of the automatic stay, the issue was at the core of Plato's request for relief, was briefed by the parties, and was obviously implicit in the Illinois court's ruling. The Illinois court could not have denied Plato's motion unless it had determined that enforcement of the Body Attachment Order did not violate the automatic stay.

Plato appealed the decision of the Illinois court and the decision was affirmed. Eventually, Plato's current spouse posted bond and he was released from Cook County Jail. Plato spent seven weeks in jail. Plato did not seek relief from this Court, by filing this

adversary proceeding, until January 19, 2022, over five-and-a-half months after his incarceration and nearly four months after his release.

In Plato's initial schedules of assets and liabilities in his bankruptcy case, filed under oath, he listed Teddy's claim of $5,183,681.98 as a domestic support obligation. He listed his interest as beneficiary of the KM Trust as being subject to the "full discretion" of the trustee of the KM Trust and having a value of "$0.00." ECF No. 8, Case No. 20-22967-EPK. In other words, Plato claimed only a value-less beneficial interest in the KM Trust, from which he has no absolute right to distributions. Plato did not claim any ownership interest in the assets held by the KM Trust.

In Plato's initial schedules, he stated under oath that he owns only his home in Wellington, Florida as tenants by the entirety with his current spouse, a pistol, his personal clothing, a watch, hearing aids, cash on hand of $100, two empty checking accounts, and the right to receive monthly social security benefits. ECF No. 8, Case No. 20-22967-EPK. Plato claimed all of this property as exempt. Plato stated that all other property in his possession is owned by the KM Trust. That includes, for example, the furniture and household goods in his homes.

Plato has thrice amended his schedules. ECF Nos. 13, 67, and 74, Case No. 20-22967-EPK. None of the amendments changed Plato's statements under oath about his assets or his debt to Teddy.

Early in the bankruptcy case, the chapter 7 trustee filed a motion asking the Court to order Plato and his business entities to turn over to the chapter 7 trustee all assets of the KM Trust, among other relief. ECF No. 37, Case No. 20-22967-EPK. In a memorandum in response to that motion, Plato stated: "Neither KM nor its assets are property of the Bankruptcy Estate." ECF No. 62 (at 7), Case No. 20-22967-EPK. This statement is consistent with Plato's schedules filed under oath.

In the complaint in this adversary proceeding, Plato alleges: "None of the exceptions found in 11 U.S.C. § 362(b) apply to the Defendants (sic) actions." This necessarily includes the section 362(b)(2)(B) exception for "collection of a domestic support obligation from property that is not property of the estate." It is undisputed that Teddy's claim is a domestic support obligation. Thus, the exception applies so long as Teddy was not attempting to collect from bankruptcy estate assets. Put another way, Plato's allegation that no exception to the automatic stay applies is the same as alleging that the defendants sought to collect Teddy's domestic support claim from assets of the bankruptcy estate. The defendants sought collection only against the assets of the KM Trust. So, for Plato's allegation in this adversary proceeding to be true, the assets of the KM Trust must be property of this bankruptcy estate. By alleging that none of the automatic stay exceptions apply, Plato is saying that the KM Trust assets are his. This is directly at odds with Plato's position under oath in his own schedules that assets of the KM Trust are not property of the estate.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56, made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the Court determines that the "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant supports its assertion that a fact cannot be disputed by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of meeting this standard. *Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006). "An issue of fact is 'material' if it is a legal element of the claim

under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *In re Pony Express Delivery Services, Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006).

## Discussion

In this adversary proceeding, Plato seeks damages and punitive damages for violation of the automatic stay imposed under 11 U.S.C. § 362(a). Plato alleges the defendants violated the automatic stay when they facilitated his incarceration in their effort to collect a domestic support obligation from the assets of the KM Trust or other assets that are not property of the bankruptcy estate.

Section 362(b)(2)(B) provides an exception to the automatic stay for collection of a domestic support obligation from property that is not property of the estate. In the Illinois court, Teddy argued the automatic stay did not prevent her from pursuing assets of the KM Trust because Plato asserted the trust assets are not property of the estate in his bankruptcy case.[1]

Before proceeding to the primary issues presented in the Motion, the Court must address an initial theory argued by Plato. He says that to the extent the defendants sought to collect from non-estate property other than assets of the KM Trust, there is no such property and this constitutes a violation of the automatic stay. In the Illinois contempt action, defendants explicitly sought to collect only from assets of the KM Trust. But even if they did seek to collect from other non-estate assets, logic does not support Plato's argument.

---

[1] Under 11 U.S.C. § 541(c)(2), restrictions on transfer of beneficial interests in spendthrift trusts are enforceable in bankruptcy cases to prevent those interests from becoming property of the bankruptcy estate. Plato's position with regard to property of the KM Trust is at least a colorable application of this provision.

Section 362(b)(2)(B) provides an exception for collection of domestic support obligations from property outside the bankruptcy estate. So long as the defendants sought to collect only from non-estate property, they are protected by the exception. For example, although it appears that Plato does not have current income from employment, if he were to obtain any such income it would not be property of the estate in his chapter 7 case and the defendants could pursue it by garnishment or other remedies.

The defendants request summary judgment under two theories. First, the defendants argue that the Court should abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1), relying on the Eleventh Circuit's decision in *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992). Second, the defendants argue that the Court should apply judicial estoppel to prevent Plato from asserting an automatic stay violation because Plato disclaimed under oath any interest in the assets of the KM Trust and this is directly at odds with his allegations in this adversary proceeding.

Plato responds that the Court should not abstain from this adversary proceeding, arguing that the Eleventh Circuit's decision in *Carver* was overruled by the Supreme Court in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). Plato argues against application of judicial estoppel, stressing that the defendants had notice that the chapter 7 trustee claimed the KM Trust assets are property of the bankruptcy estate.

### *Abstention*

11 U.S.C. § 1334(c)(1) provides that bankruptcy courts may abstain from hearing a proceeding arising under the Bankruptcy Code or arising in or related to a bankruptcy case "in the interest of justice, or in the interest of comity with State courts or respect for State law."

In the Motion, the defendants argue that the Eleventh Circuit's decision in *Carver* militates in favor of the Court abstaining from this adversary proceeding. The facts in *Carver*

are similar to the facts of this case. Like Plato, Mr. Carver had been ordered to pay monthly support and related sums following divorce. *Carver*, 954 F.2d at 1575. Mr. Carver defaulted on his obligations. Apparently not for the first time, his former spouse was forced to pursue a motion for contempt to obtain payment of the arrears. The state court held Mr. Carver in contempt, ordered him jailed for six months unless he paid all arrears, and issued a bench warrant for his arrest. After Mr. Carver was incarcerated for a short time, his new spouse paid to obtain his release. The facts of *Carver* differ from this case in two regards. Mr. Carver hid from his ex-spouse that he had filed a bankruptcy petition; her counsel found out about the filing by accident. But Mr. Carver's ex-spouse did learn of his petition prior to prosecuting the contempt motion, and so had actual knowledge of Mr. Carver's pending bankruptcy. Also, Mr. Carver filed a chapter 13 petition, so his post-petition income was included in property of the estate. When his ex-spouse sought to collect the arrears, she sought collection from his wages, which were estate assets, and so did not have the protection of section 362(b)(2)(B). In this case, Plato filed a chapter 7 petition, so any post-petition income is not included in his bankruptcy estate.

After his release from jail, Mr. Carver sought sanctions against his ex-spouse for willful violation of the automatic stay. *Id*. at 1576. The bankruptcy court heard the matter and awarded substantial damages. Although the Eleventh Circuit agreed that Mr. Carver's ex-spouse had violated the automatic stay, the Eleventh Circuit reversed, ruling that the bankruptcy court should have abstained. Citing the longstanding domestic relations exception developed in diversity and federal question matters, the Eleventh Circuit opined that "bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support." *Id*. at 1579. The court instructed that bankruptcy courts should consider "the purposes of the automatic stay provision as well as

concerns of justice, comity, and judicial economy that support abstention in domestic relations cases." *Id*. at 1579-80 (citation omitted).

In support of its ruling in *Carver*, the Eleventh Circuit noted that the ex-spouse's actions had no negative impact on other creditors as Mr. Carver's chapter 13 plan provided for payment of the arrears and the funds used to obtain his release were not estate assets but came from his father-in-law via his new spouse. Also, the Eleventh Circuit said that Mr. Carver himself was to blame for the situation as he had repeatedly failed to make required payments. The court suggested that the state court's contempt order was "as much for his repeated disregard for the orders of the Family Court as for the purpose of obtaining the arrearages." *Id*. at 1580. It appears the ruling in *Carver* was partly due to the court's view that the ex-spouse was not particularly in the wrong and the bankruptcy court's sanction unfairly favored Mr. Carver.

Plato argues that *Carver* is no longer good law in light of the Supreme Court's ruling in *Ankenbrandt*. In that decision, the Supreme Court reviewed the development and expansion of the domestic relations exception, addressing its genesis, its source in the law, and the purposes of the exception. In the end, the Supreme Court determined to substantially limit the scope of the exception, declaring that it "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt*, 504 U.S. at 704. Plato and the defendants dispute the effect of *Ankenbrandt* on *Carver*. Plato argues that *Ankenbrandt* limited *Carver's* application to proceedings which require a determination of divorce, alimony, or child custody, rather than the enforcement of a determined monetary obligation, and cites to bankruptcy court decisions within the Eleventh Circuit in support of this proposition. The defendants argue that bankruptcy jurisdiction was not at play in

*Ankenbrandt* and that later decisions in this circuit recognize *Carver's* continuing vitality, specifically in the automatic stay context.

Even if *Carver* remains good law, the circumstances of this case do not warrant abstention. The Eleventh Circuit's concern was that the bankruptcy court should not step into the family court arena. But the Eleventh Circuit recognized that "[w]here the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim." *Carver*, 954 F.2d at 1580. In the present case, this Court need not step into the family court arena at all. Plato conceded under oath in his schedules that his obligation to Teddy is a domestic support obligation. There is no dispute on that issue. To determine whether the exception to the automatic stay under section 362(b)(2)(B) applies, the only question is whether the assets of the KM Trust -- the only assets defendants sought to collect from -- are property of this bankruptcy estate.

Under 28 U.S.C. §§ 1334(a) and (e)(1), and the District Court's standing order of reference, this Court has exclusive jurisdiction over Plato's bankruptcy case, his property, and property of the bankruptcy estate.

> The equitable jurisdiction of the bankruptcy court over property of the estate is the single most central component of bankruptcy jurisdiction. The entirety of bankruptcy jurisprudence in the United States, including the Bankruptcy Act, the present Bankruptcy Code, and more than 200 years of case law including numerous Supreme Court decisions, hammers home the idea that bankruptcy is at its core an equitable proceeding dealing with a specific *res*, the bankruptcy estate. There is nothing more core to the bankruptcy process than the determination of what is, and what is not, included in the bankruptcy estate.

*Fannie Mae v. CCH John Eagan II Homes, L.P. (In re CCH John Egan II Homes, L.P.)*, No. 16-01183-EPK, 2016 Bankr. LEXIS 3758, *11-17 (Bankr. S.D. Fla. Oct. 17, 2016) (outlining the scope of federal bankruptcy jurisdiction) (citation omitted). No other court has the power

to determine whether the assets of the KM Trust are property of the bankruptcy estate. This question does not in any way impede on the family law jurisdiction of the state court.

In light of the foregoing, the Court will not abstain from this adversary proceeding.

### *Judicial Estoppel*

"The equitable doctrine of judicial estoppel is intended to protect courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1176 (11th Cir. 2017). Courts in this circuit consider "whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Id.* at 1181. When considering whether a debtor intended to make a mockery of the judicial system, "a court should look to all the facts and circumstances of the particular case." *Id.* at 1185.

In *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court stated that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 750, *quoting Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (7th Cir. 1982). Nevertheless, the Supreme Court referenced three considerations often considered in the application of judicial estoppel. First, whether a party took clearly inconsistent positions. *Id.* at 750. Second, whether "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (quotation marks omitted). Third, whether the party asserting the "inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

Plato and the defendants agree the Court should apply the standard from *Slater*, which parallels the first two considerations suggested by the Supreme Court in *New*

*Hampshire*. The defendants urge the Court to also consider the unfair advantage concept from *New Hampshire*. Plato argues that the Eleventh Circuit rejected it and that its consideration would inappropriately introduce a good faith inquiry into whether the defendants violated the automatic stay. There are two problems with this argument. First, the question at this point is whether Plato should be bound by his earlier (and ongoing) position under oath, not whether the defendants violated the stay, so application of the unfair advantage concept would not impact the standard used by this Court to determine whether a violation of the stay occurred. Second, the Eleventh Circuit did not reject the unfair advantage concept in *Slater*; it simply determined the concept did not apply in the circumstances of the case before it. *Slater*, 871 F.3d at 1182.

In the end, it is important to stress that there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751.

Plato's inconsistent positions were both taken before this Court rather than before two separate courts, but they were nevertheless in separate proceedings. In his main bankruptcy case, Plato attempts to prevent his bankruptcy trustee and creditors from accessing the KM Trust assets by taking the position under oath that he has no property interest in the assets of the KM Trust. In this separate adversary proceeding, he seeks damages against the defendants for trying to collect from those same assets on a theory that can only be successful if those assets are in fact property of the estate subject to administration. There is no more blatant inconsistent position.

Plato argues that he did not obtain an unfair advantage by his inconsistent positions as no court has yet to rule in his favor. This argument is misleading. Because Plato disclaimed any ownership in the assets of the KM Trust, his bankruptcy trustee sought

rulings that those assets are property of the bankruptcy estate by motion as well as through an adversary proceeding against Plato, the KM Trust and others. ECF No. 37, Case No. 20-22967; Adv. Proc. No. 21-01362. The chapter 7 trustee recently settled the adversary proceeding against Plato and the KM Trust parties, so there will be no ruling on the merits whether the KM Trust assets are property of the bankruptcy estate. Nevertheless, Plato undoubtedly obtained a benefit from his position under oath that he does not own any of the KM Trust assets as that position aided in fending off the trustee's claims. If Plato were successful in this suit, he would thereby obtain an unfair advantage over the defendants. He would have benefitted from both of his inconsistent positions. Plato's two-faced approach here makes a mockery of the judicial system.

That Plato disclosed the existence of the KM Trust in his schedules is of no moment. This is not a case involving a complete failure to disclose assets. The issue is that Plato disclaims under oath any ownership in the assets held by the KM Trust.

That Plato's bankruptcy trustee disagreed with his position that the KM Trust assets are not property of the estate has no impact at all on the Court's analysis here. Obviously, when a party takes a position under oath in litigation, the party's adversary may take a contrary position. That does not mean that the party is later able to take a diametrically opposed position to its earlier one and get away with it.

In this context, the Eleventh Circuit instructs the Court to consider all the relevant facts and circumstances. Plato is a sophisticated businessman consistently represented by competent counsel. He has spent more than twenty years doing everything in his power to prevent Teddy from collecting court-ordered maintenance payments. The Illinois courts repeatedly found that the settlement of the KM Trust was a fraudulent transfer aimed solely at avoiding Plato's obligations to Teddy. In pursing contempt proceedings post-petition, the defendants relied on Plato's position under oath that he has no ownership interest in the

assets of the KM Trust. Now Plato asks this Court to hold the defendants liable on a theory directly contrary to his un-modified oath in his bankruptcy case. This adversary proceeding is just Plato's most recent move in his unending refusal to comply with orders of the Illinois state court and make good on his obligations to Teddy.

Judicial estoppel prohibits Plato from asserting that assets of the KM Trust are property of the bankruptcy estate. This is fatal to Plato's claims in this adversary proceeding. For this reason, the defendants are entitled to summary judgment in their favor.

## ORDER

For the foregoing reasons, it is ORDERED and ADJUDGED that the Motion [ECF No. 52] is GRANTED. The Court will enter separate final judgment in favor of all defendants and against Plato Chris Foufas.

###

Copy to:

Mark A. Levy, Esq.

*Mark A. Levy, Esq. is directed to serve a copy of this order on all parties in interest and to file a certificate of service with the Court.*